AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Black iPhone Cell Phone,
IMEI #1: 35 679911 428586 6, Exhibit N-3, R6-22-0069
("Target Device #2")

Case No. '22 MJ3535

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the     Southern     District of     California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |
| 21 USC Sec. 846 | Conspiracy to Possess a Controlled Substance with Intent to Distribute |

The application is based on these facts:
See attached affidavit, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ramon Nuno, DEA Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by     telephone     *(specify reliable electronic means)*.

Date: September 27, 2022

*Judge's signature*

City and state: San Diego, California

Hon. Andrew G. Schopler, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black iPhone Cell Phone
> Model MT2E2LL/A
> IMEI: 35 733709 985724 0
> Exhibit N-2, R6-22-0069
> ("**Target Device #1**")

**Target Device #1** is currently in the possession of the Drug Enforcement Administration, at 2425 La Brucherie Road, Imperial, California 92251.

## ATTACHMENT A-2

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black iPhone Cell Phone
> IMEI #1: 35 679911 428586 6
> Exhibit N-3, R6-22-0069
> ("**Target Device #2**")
>
> (collectively, **Target Device #1** and **Target Device #2** are the "**Target Devices**")

**Target Device #2** is currently in the possession of the Drug Enforcement Administration, at 2425 La Brucherie Road, Imperial CA 92251.

## ATTACHMENT B
### ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 7, 2022, up to and including June 7, 2022:

   a. tending to indicate efforts to possess with intent to distribute federally controlled substances;

   b. tending to identify accounts, facilities, storage Device, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of or possession with the intent to distribute controlled substances within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of or the possession with the intent to distribute controlled substances within the United States;

   d. tending to identify travel to or presence at locations involved in the distribution of or possession with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

# AFFIDAVIT

I, Drug Enforcement Administration Task Force Officer Ramon Nuno, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic devices:

> Black iPhone Cell Phone
> Model MT2E2LL/A
> IMEI: 35 733709 985724 0
> Exhibit N-2, R6-22-0069
> (**"Target Device #1"**)
>
> Black iPhone Cell Phone
> IMEI #1: 35 679911 428586 6
> Exhibit N-3, R6-22-0069
> (**"Target Device #2"**) (collectively, the **"Target Devices"**)

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of 21 U.S.C. §§ 841(a)(1) and 846, as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Isabel PEREZ-MACIAS ("PEREZ") and Jimmy VALDOVINOS ("VALDOVINOS") in *United States v. Perez et al.*, 22-cr-2042-JO, for possessing a mixture and substance containing a detectable amount of methamphetamine with the intent to distribute said mixture and substance to another person. The **Target Devices** are currently in the custody of the Drug Enforcement Administration, at 2425 La Brucherie Road, Imperial, California 92251.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

//
//

## BACKGROUND

3. I am a Task Force Officer with the Drug Enforcement Administration, and have been assigned to the Task Force since January 2018. I am currently assigned to the Imperial County District Office. Prior to my current duties, I was on patrol as a Deputy Sheriff with the Imperial County Sheriff's Office for approximately six years.

4. I have been assigned to the High Intensity Drug Traffic Area (HIDTA) unit and have been assigned to investigate crimes involving potential drug dealers and their associates involved in narcotic sales and drug trafficking. My past experiences included six years as a Deputy Sheriff with the Imperial County Sheriff's Office, which include me being assigned to the following assignments: Field Training Officer, Officer in charge of a patrol shift, Mobile Field Force Team, and patrol. In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, 801 et seq. and the Federal Controlled Substance Act. I have received training, both formal and informal.

5. I am aware that it is common practice for drug traffickers to work in concert utilizing cellular telephones to maintain and store communications and related items with co-conspirators in order to further their criminal activities. A common tactic utilized by narcotics traffickers is to transport controlled substances within the United States by concealing the controlled substances in vehicles that travel within the United States, specifically, within Imperial County, prior to distribution of the controlled substances. With respect to the transportation and distribution of drugs in this manner, I am aware that drug traffickers in Mexico and the United States frequently communicate with the individuals responsible for transporting and distributing the controlled substances within the United States. These communications can occur before, during and after the drugs are transported and distributed within the United States. For example, prior to the transportation, drug traffickers frequently communicate with the driver regarding arrangements and preparation for the drug transportation. When the transportation is underway, drug traffickers frequently communicate with the driver to remotely monitor the

progress of the drugs, provide instructions to the driver and warn accomplices about law enforcement activity. When the drugs have been transported further into the United States, drug traffickers may communicate with the courier or driver to provide further instructions regarding the transportation of the drugs for distribution within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in controlled substance investigations, and all the facts and opinions set forth in this affidavit, I am aware that conspiracies involving distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone and computer-related evidence such as voicemail messages referring to the arrangements of payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging applications such as WhatsApp, Text Now, social networking messages, and videos reflecting co-conspirators or illegal activity. I am also aware that cellular telephones (including their SIM card(s) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a. Drug traffickers and their co-conspirators will use cellular/mobile telephones and tablets because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    b. Drug traffickers and their co-conspirators will use cellular/mobile telephones to negotiate the price, type, and quantity of drugs being sold to customers, and received from suppliers;

    c. Drug traffickers and their co-conspirators will use cellular/mobile telephones to arrange times and places to meet with customers to deliver illegal drugs, and to arrange times and places to meet with suppliers to receive illegal drugs;

  d. Drug traffickers and their co-conspirators will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as ongoing enforcement operations in their area;

  e. Drug traffickers and their co-conspirators will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

  f. Drug traffickers and their co-conspirators often use cellular/mobile telephones to record money owed to customers and suppliers and as evidence of past orders received and/or delivered; and

  g. The use of cellular telephones and other mobile communication devices by conspirators or drug traffickers tends to generate evidence that is stored on the device, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

  7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

  a. tending to indicate efforts to possess with intent to distribute methamphetamine or other federally controlled substances;

  b. tending to identify accounts, facilities, storage Device, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of or possession with the intent to distribute

        methamphetamine, or some other federally controlled substance, within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the distribution of or the possession with the intent to distribute methamphetamine, or some other federally controlled substance, within the United States;

    d.    tending to identify travel to or presence at locations involved in the distribution of or possession with the intent to distribute methamphetamine, or some other federally controlled substance, within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

8.    On June 7, 2022, United States Border Patrol Agent ("BPA") Ruben Moya was assigned to the Highway 86 Border Patrol Checkpoint, located near Westmorland, California.

9.    At approximately 4:40 p.m., a gray Volkswagen Tiguan bearing California License Plates (the "vehicle"), driven by PEREZ and occupied by passenger VALDOVINOS, approached the primary inspection area. PEREZ told BPA Moya that she was coming from Glamis, California and heading home to Los Angeles, California. BPA Moya conducted an immigration inspection. PEREZ answered "yes" to the question if she was a United States citizen. VALDOVINOS nodded his head in the affirmative but did not orally respond to the question if he was a United States citizen. BPA Moya asked PEREZ if there were any other individuals in the vehicle other than her and VALDOVINOS. PEREZ answered "no." BPA Moya asked PEREZ if she consented to him inspecting the rear seats and the rear compartment of the vehicle. PEREZ answered "yes." BPA Moya performed an inspection by looking through the rear passenger

1 windows, but he was unable to see through to the rear compartment area due to the dark window tint. BPA Moya directed the vehicle to secondary inspection for further inspection of the vehicle's rear compartment area.

10. In secondary, BPA McCall asked PEREZ for permission to search the vehicle. PEREZ again gave consent. During the subsequent canine sniff of the interior and exterior of the vehicle, BPA McCall's Human and Narcotics Detection Dog alerted to the presence of drugs emanating from the front passenger seat of the vehicle. BPA McCall also noticed that the carpet in the vehicle was glued, which based on his experience is consistent with an after-market compartments located in the floorboard. A further search of the vehicle revealed a non-factory compartment located under the driver and front passenger seat. Inside the hidden compartment, BPA McCall discovered 60 vacuum sealed packages containing a white crystal-like substance. The packages weighed approximately 27.53 kilograms (60.69 pounds).

11. BPA Ceballos randomly selected one of the packages and conducted a field drug test using a narcotics identification kit. At the time, the substance tested positive for the characteristics of methamphetamine. BPA McCall subsequently detained PEREZ and VALDOVINOS.

12. Agents from the Drug Enforcement Administration ("DEA") were contacted by United States Border Patrol ("USBP") and subsequently responded to the USBP Highway 86 Checkpoint near Westmorland, California.

13. VALDOVINOS was advised of his *Miranda* rights, knowingly and voluntarily waived his rights, and agreed to speak with DEA agents without the presence of an attorney. During the interview, VALDOVINOS kept contradicting his statements. VALDOVINOS then decided to be honest and stated he was recruited by a subject to drive down to El Centro, California, and pick up the methamphetamine for approximately $1,500 dollars. VALDOVINOS stated that he had PEREZ drive the vehicle back through the Highway 86 checkpoint where they were later apprehended. VALDOVINOS stated that PEREZ volunteered to be his driver, and PEREZ had knowledge of the crime.

14. PEREZ was advised of her *Miranda* rights, knowingly and voluntarily waived her rights, and agreed to speak with DEA agents without the presence of an attorney. During the interview, PEREZ said that she had no knowledge of what happened and said VALDOVINOS has been her boyfriend for approximately one month. PEREZ said that VALDOVINOS had invited her to go off-roading the night before with him and his friends. PEREZ claimed that the vehicle belonged to VALDOVINOS's cousin, that the vehicle was with them at all times, and that no one ever took the vehicle from them. PEREZ later changed her story, and said that a friend of hers called her that same morning and asked her to drive VALDOVINOS to his uncle's house to give him money. PEREZ admitted that VALDOVINOS is not her boyfriend and that she just met him that morning. PEREZ said that they went to a house, parked in an alley, and a Hispanic male took the vehicle for approximately 15 minutes. PEREZ claimed that she was going to be paid $100 for driving VALDOVINOS.

15. PEREZ and VALDOVINOS were placed under arrest and charged with violation of 21 U.S.C. § 841(a)(1), possession of a controlled substance with intent to distribute. PEREZ and VALDOVINOS were booked at El Centro, California, GEO facility pending court proceedings.

16. The **Target Devices** were found and seized by a BPA who was tasked to perform a secondary inspection of the vehicle and inventory all the property seized from PEREZ, VALDOVINOS, and the vehicle. PEREZ and VALDOVINOS were the only occupants of the vehicle, and had sole dominion and control of the items and property inside the vehicle, including the **Target Devices**, at the time of the offense. Further, during the post-arrest interview of PEREZ, PEREZ was shown **Target Device #1** and she identified **Target Device #1** as belonging to her and provided written consent to search **Target Device #1**. During the post-arrest interview of VALDOVINOS, VALDOVINOS was shown **Target Device #2** and he identified **Target Device #2** as belonging to him and provided written consent to search **Target Device #2**.

17. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices**. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the **Target Devices** to communicate with others to further the distribution of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the **Target Devices** for data beginning on May 7, 2022, up to and including June 7, 2022.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.

Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

21. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

//
//
//
//
//
//

## CONCLUSION

22. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Devices** will yield evidence of PEREZ and VALDOVINO's violations of 21 U.S.C. §§ 841(a)(1) and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Officer Ramon Nuno
Drug Enforcement Administration

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 27th day of September, 2022.

_____
Honorable Andrew G. Schopler
United States Magistrate Judge
Southern District of California

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The following property is to be searched:

>Black iPhone Cell Phone
>Model MT2E2LL/A
>IMEI: 35 733709 985724 0
>Exhibit N-2, R6-22-0069
>("**Target Device #1**")

**Target Device #1** is currently in the possession of the Drug Enforcement Administration, at 2425 La Brucherie Road, Imperial, California 92251.

## ATTACHMENT A-2

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black iPhone Cell Phone
> IMEI #1: 35 679911 428586 6
> Exhibit N-3, R6-22-0069
> (**"Target Device #2"**)
>
> (collectively, **Target Device #1** and **Target Device #2** are the **"Target Devices"**)

**Target Device #2** is currently in the possession of the Drug Enforcement Administration, at 2425 La Brucherie Road, Imperial CA 92251.

## ATTACHMENT B
### ITEMS TO BE SEIZED

Authorization to search the cellular telephones described in Attachments A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 7, 2022, up to and including June 7, 2022:

a. tending to indicate efforts to possess with intent to distribute federally controlled substances;

b. tending to identify accounts, facilities, storage Device, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the distribution of or possession with the intent to distribute controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the distribution of or the possession with the intent to distribute controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the distribution of or possession with the intent to distribute controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.